UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TRACY R.,

        Plaintiff,                     **DECISION AND ORDER**

    v.

                                             6:20-CV-06132 EAW

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

# **INTRODUCTION**

Represented by counsel, Plaintiff Tracy R. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 13), and Plaintiff's reply (Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 13) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on February 4, 2013. (Dkt. 7-5 at 2-26).[1] Plaintiff alleged disability beginning February 1, 2013, due to several impairments, including post-traumatic stress disorder, depression, anxiety, panic attacks, sleep apnea, and fibromyalgia. (Dkt. 7-4 at 6; Dkt. 7-5 at 35; Dkt. 7-12 at 7). Plaintiff's applications were initially denied on May 15, 2013. (Dkt. 7-3 at 28, 29). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") John Costello, who issued an unfavorable decision on February 27, 2015. (Dkt. 7-2 at 23-32). Following a denial of review by the Appeals Council on June 20, 2016 (Dkt. 7-2 at 2-7), Plaintiff sought review in this Court and the matter was remanded for further proceedings on March 5, 2018, *Tracy R. v. Cmm'r*, 16-CV-6577-CJS (Dkt. 7-14 at 2-18). On August 23, 2018, the Appeals Council remanded the case to the ALJ. (Dkt. 7-14 at 19-23).

On September 23, 2019, a second hearing was held before the same ALJ in Rochester, New York. (Dkt. 7-12 at 7; Dkt. 7-13 at 2-30). On November 6, 2019, the ALJ issued an unfavorable decision. (Dkt. 7-12 at 7-26). After 60 days, the ALJ's determination became the Commissioner's final decision. *See Marchand v. Comm'r of Soc. Sec.*, No. 17-CV-3252 (ENV), 2017 WL 2633511, at *2 (E.D.N.Y. June 14, 2017) ("[W]here, as here, the case has been remanded from federal court, the ALJ's subsequent decision on remand becomes the 'final decision' of the Commissioner unless the Appeals Council assumes

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

jurisdiction of the case within 60 days after the ALJ's decision is issued." (quoting 42 U.S.C. §§ 404.984(d), 416.1484(d)).  This action followed.

## LEGAL STANDARD

I.  **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*.

§§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

The disability determination analysis does not end with the five-step sequential analysis when the medical evidence shows alcohol or substance abuse. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir.2012). If the ALJ determines that a claimant is disabled and there is medical evidence of alcoholism or substance abuse, then the ALJ must determine whether the alcoholism or substance abuse is "a contributing factor material" to the determination that the claimant is disabled. 20 C.F.R. §§ 404.1535, 416.935; *Gregory C. v. Comm'r of Soc. Sec.*, No. 19-CV-1040S, 2021 WL 508053, at *2 (W.D.N.Y. Feb. 11, 2021) (noting that in cases with evidence of substance abuse, "a secondary analysis must be conducted to determine whether the claimant's drug addiction or alcoholism is material to the initial finding of disability"). An individual "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In determining whether the claimant's alcoholism or substance abuse is material, the "key factor" is whether the claimant would still be found disabled if

she stopped using alcohol or abusing substances. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b), *Gregory C.*, 2021 WL 508053, at *2 ("A "key factor" under the secondary analysis is whether the claimant would still be found disabled if they stopped using drugs or alcohol."). If the ALJ determines that the claimant's remaining limitations would not be disabling in the absence of substance use, the drug addiction or alcoholism will be found to be a contributing factor material to the determination of disability. *Gregory C.*, 2021 WL 508053, at *2. "The claimant has the burden of proving that his DAA is not material to the determination that [she] is disabled." *Roundtree v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-07347-LTS-SDA, 2021 WL 431514, at *10 (S.D.N.Y. Jan. 15, 2021), *report and recommendation adopted*, No. 19-CV-7347-LTS-SDA, 2021 WL 431452 (S.D.N.Y. Feb. 8, 2021).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 1, 2013, the alleged onset date. (Dkt. 7-12 at 10).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: depression, anxiety, attention deficit hyperactivity disorder, borderline personality disorder, posttraumatic stress disorder, lumbar disc disease, fibromyalgia, obesity, and history of substance abuse. (*Id.*). The ALJ also found that Plaintiff's medically

determinable impairments of gastroesophageal reflux disease and seizure disorder were non-severe impairments. (*Id.*).

At step three, the ALJ found that even with her substance use, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.04 and 12.00 in reaching his conclusion, as well as considering the effect of Plaintiff's fibromyalgia as required by Social Security Ruling ("SSR") 12.2p. (*Id.* at 10-11).

Before proceeding to step four, the ALJ determined that with substance use, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> is limited to occasional exposure to respiratory irritants such as dust, odors, fumes, extremes in temperatures, and humidity. [Plaintiff] is able to perform simple routine tasks with occasional changes in the work setting and have occasional interaction with coworkers and the general public. [Plaintiff] will be off task for 50 percent of an eight hour workday.

(*Id.* at 12). At step four, the ALJ found that with substance use, Plaintiff was not capable of performing her past relevant work as a medical secretary, home health aide, shift manger, and nurse assistant. (*Id.* at 17-18). At step five, the ALJ further found that with substance use, there were no other jobs in the national economy that Plaintiff could perform. (*Id.* at 18).

The ALJ then determined that if Plaintiff's substance use ceased, she would continue to have a severe impairment or combination of impairments, but did not have an impairment or combination of impairments that would meet or medically equal a listed impairment. (*Id.* at 19). The ALJ determined that without substance use, Plaintiff would

determinable impairments of gastroesophageal reflux disease and seizure disorder were non-severe impairments. (*Id.*).

At step three, the ALJ found that even with her substance use, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.04 and 12.00 in reaching his conclusion, as well as considering the effect of Plaintiff's fibromyalgia as required by Social Security Ruling ("SSR") 12.2p. (*Id.* at 10-11).

Before proceeding to step four, the ALJ determined that with substance use, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations that Plaintiff:

> is limited to occasional exposure to respiratory irritants such as dust, odors, fumes, extremes in temperatures, and humidity. [Plaintiff] is able to perform simple routine tasks with occasional changes in the work setting and have occasional interaction with coworkers and the general public. [Plaintiff] will be off task for 50 percent of an eight hour workday.

(*Id.* at 12). At step four, the ALJ found that with substance use, Plaintiff was not capable of performing her past relevant work as a medical secretary, home health aide, shift manger, and nurse assistant. (*Id.* at 17-18). At step five, the ALJ further found that with substance use, there were no other jobs in the national economy that Plaintiff could perform. (*Id.* at 18).

The ALJ then determined that if Plaintiff's substance use ceased, she would continue to have a severe impairment or combination of impairments, but did not have an impairment or combination of impairments that would meet or medically equal a listed impairment. (*Id.* at 19). The ALJ determined that without substance use, Plaintiff would

retain the same RFC but without the inclusion of a limitation to be off task for 50 percent of an 8 hour workday. (*Id.* at 21). He concluded that without substance use, she remained unable to perform past relevant work. (*Id.* at 25). At step five of the sequential evaluation process, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, without substance use and considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk and photo copy machine operator. (*Id.* at 26). Accordingly, the ALJ found that:

> [Plaintiff's] substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if [s]he stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(*Id.* at 26).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing: (1) the ALJ did not properly analyze the effect of Plaintiff's substance abuse on her impairments, and (2) the ALJ failed to reconcile conflicts between the medical opinion evidence and the RFC. (Dkt. 10-1 at 19-27). The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A. Consideration of Plaintiff's Substance Abuse

Plaintiff argues that the ALJ failed to properly consider whether her substance abuse was a contributing factor material to the determination of disability. (Dkt. 10-1 at 19-23).

As noted, 20 C.F.R. §§ 404.1535(a), 416.935(a), state, "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." As explained in *Santiago v. Berryhill*, No. 17-cv-00728F, 2019 WL 289778 (W.D.N.Y. Jan. 23, 2019):

> The inquiry in determining whether alcoholism or drug addiction are contributing factors material to the determination of disability is whether the claimant would still meet the definition of disability under the Act if he or she stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b)(1), and 416.935(b)(1). If the claimant's remaining limitations would not be disabling, the claimant's drug or alcohol addiction is found to be a contributing factor material to the determination of disability and benefits will be denied. 20 C.F.R. § 404.1535(b)(2). Alternatively, if it is determined that the claimant's remaining limitations are disabling, the claimant will be deemed disabled independent of his drug or alcohol addiction such that the claimant's drug or alcohol addiction is not a contributing factor material to a finding of disability and benefits will be granted. 20 C.F.R. §§ 404.1535(b)(2), and 416.935(b)(2). To find that drug and/or alcohol use is material, an ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of [drugs or alcohol]."

*Id*. at *2 (quoting *Bukowski v. Berryhill*, No. 1:15-CV-00268-MAT, 2017 WL 5789990, at *2 (W.D.N.Y. Nov. 29, 2017)) (alteration in original); *see also Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA)*, SSR 13-2p, 2013 WL 621536, at *9 (Feb. 20, 2013). "The Second Circuit has held that where a claimant is found to be disabled by the Commissioner yet engages in substance abuse or alcoholism, the claimant has the burden to prove that drug abuse and alcoholism do not materially contribute to the disability, and that she would still be disabled even if sober." *Perez v. Saul*, No. 20-CIV-513(KMK)(PED), 2021 WL 1179166, at *19 (S.D.N.Y. Jan. 29, 2021), *report and*

*recommendation adopted*, No. 20-CV-513 (KMK), 2021 WL 1178168 (S.D.N.Y. Mar. 29, 2021).

Plaintiff argues that in the ALJ's determination of Plaintiff's abilities in the absence of substance use, the ALJ failed to properly evaluate the medical opinions and other evidence of record or provide a clear explanation of the evidence being relied upon to reach that determination. The Court disagrees.

In his decision, the ALJ noted that a prescription for Percocet for back pain in 2006 led to Plaintiff's history of substance abuse, which included the use of alcohol, opioids, cocaine, and heroin. (Dkt. 7-12 at 13, 21). He noted that she was incarcerated in state prison for a period of two years as a result of a fraud conviction for writing bad checks. (*Id.* at 13, 21).

In support of his conclusion that with substance use, Plaintiff would be off task for 50 percent of an 8 hour work day, the ALJ considered the March 29, 2013 opinion of Kavitha Finnity, Ph.D. (Dkt. 7-9 at 21-24). In it, Dr. Finnity found that Plaintiff has no limitation in her ability to follow and understand simple directions and instructions, but is mildly limited in her ability to maintain attention and concentration and maintain a regular schedule due to her psychiatric symptoms. (Dkt. 7-9 at 23). Dr. Finnity opined that Plaintiff is moderately limited in her ability to relate with others and deal with stress. (*Id.*). The ALJ gave Dr. Finnity's opinion partial weight because the opinion does not account for the effect that substance use has on Plaintiff's ability to function, but gave great weight to the opinion that Plaintiff is not markedly impaired in any area of mental health

functioning, finding this conclusion consistent with the evidence of record. (Dkt. 7-12 at 14-15).

The ALJ considered three assessments conducted for the Monroe County Department of Social Services to determine employability which were completed by Christine Ransom, Ph.D., Dr. Finnity, and Karyn Dietz, MHC. (*Id.* at 15-16).

Dr. Ransom completed her assessment on September 27, 2010. (Dkt. 7-10 at 40-45). In it, she found Plaintiff very limited, or unable to function 75% of the time, in her capability to perform complex tasks independently, maintain attention and concentration for rote tasks, and complete low stress and simple tasks. (*Id.* at 43). She opined that Plaintiff is moderately limited, defined as an inability to function 50% of the time, in her capability to follow, understand, and remember simple instructions and directions, attend to a routine, maintain basic standards of hygiene, and use public transportation. (*Id.*). Dr. Ransom concluded that Plaintiff was permanently disabled and not expected to improve. (*Id.* at 44). The ALJ gave limited weight to Dr. Ransom's opinion. (Dkt. 7-12 at 15). The ALJ reasoned that the evaluation completed by Dr. Ransom was evaluated under standards to determine if Plaintiff should be exempt from the work requirement for receiving public assistance, a standard which is not consistent with the regulations and requirements for Social Security. He noted that the form provided little to no explanation for the opinions contained therein and was issued two years before Plaintiff's disability onset. He also

concluded that the opinion was partially internally inconsistent, as well as inconsistent with other evidence of record.

Dr. Finnity completed the same form on March 21, 2013. (Dkt. 7-10 at 47-52). Dr. Finnity found Plaintiff moderately limited in her ability to maintain attention and concentration for rote tasks, attend to a routine, and maintain a basis standard of hygiene and grooming. (*Id.* at 50). He concluded that she was unable to participate in any activities except treatment or rehabilitation for a period of six months. (*Id.* at 51).

MHC Dietz completed a similar assessment on August 30, 2014. (*Id.* at 60-63). MHC Dietz opined that Plaintiff was moderately limited, defined as an inability to function 10-25% of the time, in her ability to follow, understand, and remember simple instructions, maintain attention and concentration for rote tasks, and regularly attend to a routine. (*Id.* at 62). MHC Dietz concluded that Plaintiff was unable to participate in any activities other than treatment or rehabilitation and that mental health was Plaintiff's primary focus at that time. (*Id.* at 63). The ALJ gave limited weight to the opinions of Dr. Finnity and MHC Dietz for similar reasons to those provided in his consideration of Dr. Ransom's opinions. (Dkt. 7-12 at 16).

Finally, the ALJ considered a psychiatric RFC assessment prepared by J. Echevarria, M.D. (Dkt. 7-3 at 2-27). Dr. Echevarria found Plaintiff to have moderate restriction in activities of daily living and difficulty in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (*Id.* at 8). He also found her to be moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for

extended periods, perform activities within a schedule, work in coordination with others, complete a normal workday and work week without interruptions from psychologically based symptoms, interact appropriately with the general public, accept instructions and respond to criticism from supervisors, get along with coworkers, maintain socially appropriate behavior, respond appropriately to change, travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently. (*Id.* at 11-12, 24-25). The ALJ gave limited weight to Dr. Echevarria's opinion because of later evidence tying Plaintiff's limitations to her substance abuse. (Dkt. 7-12 at 16). He gave great weight, however, to Dr. Echevarria's opinion that Plaintiff's impairments do not meet a listing. (*Id.*).

In support of his conclusion that absent substance abuse Plaintiff's impairments are not disabling, the ALJ addressed the remaining medical opinion evidence. Amy Hamilton, Ph.D., is an impartial medical expert who testified at the hearing. (*Id.* at 22; Dkt. 7-13 at 12-15). Dr. Hamilton was the Drug Abuse Program Coordinator in the Federal Bureau of Prisons in Rochester, Minnesota. (Dkt. 7-26 at 42). Dr. Hamilton opined that if Plaintiff sustained her sobriety, she would not be limited in her ability to function in a work setting. (Dkt. 7-13 at 13). Dr. Hamilton noted that Plaintiff had a clear period of sobriety when incarcerated and her psychiatric medical records during that time indicate that she was clean, sober, and required little to no mental health treatment. (Dkt. 7-12 at 22; Dkt 7-13 at 14). The ALJ gave partial weight to Dr. Hamilton's opinion. He found Dr. Hamilton's testimony to be compelling and accorded great weight to the overall opinion that plaintiff could function in a work setting without substance use. (Dkt. 7-12 at 22). He gave partial

weight to Dr. Hamilton's opinions regarding the paragraph B criteria, because the ALJ concluded that Plaintiff's limitations were greater than indicated by Dr. Hamilton in some areas. (*Id.* at 23). Specifically, Dr. Hamilton testified that Plaintiff had no impairment in understanding, remembering, and applying information, mild limitations in interacting with others and concentrating, persisting, and maintaining pace, and moderate limitations in adapting or managing herself. (Dkt. 7-13 at 13). The ALJ concurred with Dr. Hamilton's opinion that Plaintiff did not have marked limitations in the paragraph B criteria and gave the opinion great weight, finding it consistent with Plaintiff's treatment notes from the correctional facility which state: "the patient does not meet the criteria for Serious Mental Illness at this time. She does not have a history of symptoms to support this designation. OMH services are not indicated at this time. She is not interested in receiving mental health services and is not currently demonstrating symptoms of mental illness." (Dkt. 7-12 at 23 citing Dkt. 7-8 at 69).

      The ALJ also gave partial weight to the opinions of Eve Anderson-Buescher, NP, who conducted an assessment for the Monroe County Department of Social Services for assessing whether Plaintiff was subject to a public assistance work requirement on July 31, 2017, and Rachel Darcy, PMHC, who conducted the same on September 17, 2018, and April 8, 2019. (Dkt. 7-26 at 2-18). Both NP Anderson-Buescher and PMHC Darcy concluded that Plaintiff had moderate limitations affecting her ability to work and both opined that she would be unable to participate in activities except treatment or rehabilitation for up to six months. (Dkt. 7-12 at 23; Dkt. 7-26 at 12, 16). The ALJ gave only partial weight to the opinions because while they do reflect limitations, at the time of

weight to Dr. Hamilton's opinions regarding the paragraph B criteria, because the ALJ concluded that Plaintiff's limitations were greater than indicated by Dr. Hamilton in some areas. (*Id.* at 23). Specifically, Dr. Hamilton testified that Plaintiff had no impairment in understanding, remembering, and applying information, mild limitations in interacting with others and concentrating, persisting, and maintaining pace, and moderate limitations in adapting or managing herself. (Dkt. 7-13 at 13). The ALJ concurred with Dr. Hamilton's opinion that Plaintiff did not have marked limitations in the paragraph B criteria and gave the opinion great weight, finding it consistent with Plaintiff's treatment notes from the correctional facility which state: "the patient does not meet the criteria for Serious Mental Illness at this time. She does not have a history of symptoms to support this designation. OMH services are not indicated at this time. She is not interested in receiving mental health services and is not currently demonstrating symptoms of mental illness." (Dkt. 7-12 at 23 citing Dkt. 7-8 at 69).

The ALJ also gave partial weight to the opinions of Eve Anderson-Buescher, NP, who conducted an assessment for the Monroe County Department of Social Services for assessing whether Plaintiff was subject to a public assistance work requirement on July 31, 2017, and Rachel Darcy, PMHC, who conducted the same on September 17, 2018, and April 8, 2019. (Dkt. 7-26 at 2-18). Both NP Anderson-Buescher and PMHC Darcy concluded that Plaintiff had moderate limitations affecting her ability to work and both opined that she would be unable to participate in activities except treatment or rehabilitation for up to six months. (Dkt. 7-12 at 23; Dkt. 7-26 at 12, 16). The ALJ gave only partial weight to the opinions because while they do reflect limitations, at the time of

weight to Dr. Hamilton's opinions regarding the paragraph B criteria, because the ALJ concluded that Plaintiff's limitations were greater than indicated by Dr. Hamilton in some areas. (*Id.* at 23). Specifically, Dr. Hamilton testified that Plaintiff had no impairment in understanding, remembering, and applying information, mild limitations in interacting with others and concentrating, persisting, and maintaining pace, and moderate limitations in adapting or managing herself. (Dkt. 7-13 at 13). The ALJ concurred with Dr. Hamilton's opinion that Plaintiff did not have marked limitations in the paragraph B criteria and gave the opinion great weight, finding it consistent with Plaintiff's treatment notes from the correctional facility which state: "the patient does not meet the criteria for Serious Mental Illness at this time. She does not have a history of symptoms to support this designation. OMH services are not indicated at this time. She is not interested in receiving mental health services and is not currently demonstrating symptoms of mental illness." (Dkt. 7-12 at 23 citing Dkt. 7-8 at 69).

The ALJ also gave partial weight to the opinions of Eve Anderson-Buescher, NP, who conducted an assessment for the Monroe County Department of Social Services for assessing whether Plaintiff was subject to a public assistance work requirement on July 31, 2017, and Rachel Darcy, PMHC, who conducted the same on September 17, 2018, and April 8, 2019. (Dkt. 7-26 at 2-18). Both NP Anderson-Buescher and PMHC Darcy concluded that Plaintiff had moderate limitations affecting her ability to work and both opined that she would be unable to participate in activities except treatment or rehabilitation for up to six months. (Dkt. 7-12 at 23; Dkt. 7-26 at 12, 16). The ALJ gave only partial weight to the opinions because while they do reflect limitations, at the time of

the examinations, Plaintiff had been engaging in substance abuse and was noncompliant with treatment. (Dkt. 7-12 at 23).

The ALJ also considered an assessment by Dr. Kashtan, a psychiatrist who prepared a report prior to Plaintiff's release from prison on January 28, 2013. (Dkt. 7-12 at 24; Dkt. 7-9 at 2-5). In the discharge summary, Dr. Kashtan noted: "[Plaintiff] reports benefit from therapy and medications. [Plaintiff] indicates that she is free of mental health signs and symptoms. She appears to utilize mental health appropriately. [Plaintiff] also reports that therapy and psychotropic medications help control emotional stability as well as learning how to cope with symptomatic concerns appropriately." (Dkt. 7-9 at 4).

The ALJ found that the evidence of record indicates that Plaintiff's functioning improves with treatment and sobriety but that she has a poor history of compliance with prescribed treatment. (Dkt. 7-12 at 24). He concluded that despite some moderate limitations, if Plaintiff engages in treatment and remains sober, she is able to manage her limitations enough to work. (*Id.* at 25). He noted that at times her work activity, both in a restaurant and cleaning homes, has been greater than described. (*Id.*). Finally, he concluded that the RFC assessment was also supported by the other medical opinion evidence in the record. (*Id.* at 25).

Plaintiff contends that the ALJ failed to provide a clear explanation of what evidence he relied upon to reach his determination and relied on improper speculation to infer that certain providers were unaware of Plaintiff's substance use. The Court disagrees. The record contained extensive medical opinion evidence and the ALJ addressed them sufficiently. He provided detailed reasons for the weight given to each one and the Court

finds no error in those assessments. The ALJ properly considered Plaintiff's longest period of sobriety, when she was incarcerated, to support his findings in his materiality determination. *See Ervin-Atkinson v. Comm'r of Soc. Sec.*, No. 18-CV-1056-FPG, 2020 WL 830434, at *2 (W.D.N.Y. Feb. 20, 2020) (Moreover, "evidence from a period of abstinence is the best evidence for determining whether an [impairment] would improve to the point of nondisability." (quoting SSR 13-2p, 2013 WL 621536 (2013)). Evidence showing that Plaintiff demonstrated a lack of serious objective mental health challenges while imprisoned supports the ALJ's conclusion that her substance abuse was a key factor in the cause of her inability to work. "Moreover, insofar as Plaintiff maintains the opinion evidence of record could be interpreted to support a determination that Plaintiff would be disabled even without [her] DAA such that Plaintiff's DAA is not material to the determination, it is settled within the Second Circuit that 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would have to conclude otherwise.'" *Howard J. v. Saul*, No. 19-CV-1345F, 2021 WL 978843, at *5 (W.D.N.Y. Mar. 16, 2021) (internal citations and quotation omitted). For all of these reasons, the Court finds no basis for remand or reversal on this ground.

### B. Reconciliation of Conflicting Medical Opinions and Compliance with this Court and Appeals Council Directives

Finally, Plaintiff argues that the ALJ failed to reconcile conflicting medical evidence on Plaintiff's moderate limitations with respect to attention and concentration and explain how he determined that those conflicting viewpoints were consistent with the RFC,

as directed by this Court and the Appeals Council. She argues that the ALJ improperly inserted his own lay opinion to make that judgment instead.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).

In this Court's prior Order, the case was remanded in part to allow the ALJ to reconcile conflicting medical opinion evidence describing Plaintiff's limitations in concentration abilities ranging from mild to moderate to poor. The Court in its Decision and Order concluded that "the ALJ's decision does not reconcile these competing viewpoints to determine that Plaintiff had less than a moderate limitation in concentration."

*Rowling v. Colvin*, No. 16-CV-6577-CJS, 2018 WL 1151106, at *8 (W.D.N.Y. Mar. 5, 2018).

> The ALJ acknowledged the directive from this Court in his decision:
>
> Dr. Finnity, Ms. Dietz, and Dr. Echavarria each issued an opinion subsequent to the alleged onset date. Each evaluator found that the claimant had some moderate limitations. In his opinion, District Court Judge Charles J. Siragusa indicated that the term "moderate" is not defined. Judge Siragusa referred to Judge Sharpe's opinion in Reynolds v. Colvin, No. 3:13-CV-396 GLS/ESH, 2014 WL 4184729, at 4 (N.D.N.Y. Aug. 21, 2014). Judge Sharpe noted that "moderate" is an inherently vague term that is not more clearly defined in the regulations. Judge Sharpe stated that a person who is only unable to perform work 10 percent of an eight hour workday could reasonably be described as moderately impaired (Ex. 5A, p. 15). Judge Siragusa and Judge Sharpe are correct in noting that the regulations do not clearly define terms regarding mental functioning. However, the judges also noted that the Social Security Program Operations Manual requires that the degree and extent of a claimant's capacity or limitation must be described in narrative format (POMS DI 24510.063). Dr. Finnity provided a narrative description the in consultative examination indicating that the claimant had mental health limitations. The doctor did not account for the effects of the claimant's substance abuse. Absent substance abuse, the claimant is not limited in concentration for 20 percent of an eight hour workday. At most, she would be "off task" to 10 percent of the day, which is not disabling. Nevertheless, I find that, the claimant's allegations of disability are supported when she engages in substance abuse.

(Dkt. 7-12 at 17).

Notwithstanding Plaintiff's contentions to the contrary, this is not a case where the ALJ substituted his own judgment over that of medical opinion evidence. There was a voluminous record before the ALJ, containing extensive treatment records and opinion evidence. As noted, the ALJ considered the evidence before him and provided clear justification for his assessment of that evidence. The ALJ explained that he found Plaintiff's limitations to be "on the low end of the moderate scale." (*Id.* at 23). He concluded that notwithstanding her moderate limitations, she is able to perform work on

task for 90 percent of an 8 hour workday, noting that at times, she was working two jobs in excess of 30 to 38 hours a week. (*Id.* at 25). His conclusion that Plaintiff's impairments were addressed with an RFC limiting her to simple routine tasks with occasional changes in the work setting and occasional interaction with coworkers and the general public is reasonable.

In short, while portions of some of the medical opinions may be vague or inconsistent, the ALJ provided ample support for the reasoning underlying his conclusions and the amount of weight given to each. *See Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (summary order) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'"); *Matta v. Astrue*, 508 F. App'x 53, 57 (2d Cir. 2013) (because the ALJ's conclusions "may not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision" plaintiff's RFC was proper because it "took account of the opinions of all . . . experts and the notes of other treatment providers"). Moreover, "[w]here an ALJ makes an RFC assessment that is *more* restrictive than the medical opinions of record, it is generally not a basis for remand." *Barone v. Comm'r of Soc. Sec.*, No. 19-CV-00482(JJM), 2020 WL 3989350, at *4 (W.D.N.Y. July 15, 2020) (internal citations omitted) (emphasis in original). Here, the ALJ clearly took all of the medical evidence of record into account, explained why he discounted some of that

evidence, and assessed an RFC that is well-supported by the record. Remand is not required on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 29, 2021
      Rochester, New York